UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF DEUTSCHE ALT-A SECURITIES, INC., MORTGAGE LOAN TRUST PASS-THROUGH CERTIFICATES SERIES 2007-OA3, a National Banking Association,<br><br>                        Plaintiffs,<br>v.<br><br>FIDELITY NATIONAL TITLE GROUP, INC. and CHICAGO TITLE INSURANCE COMPANY,<br><br>                        Defendants. | Case No. 2:18-cv-02162-MMD-DJA<br><br>ORDER |

**I.    SUMMARY**

This is a dispute about title insurance coverage that relates to a foreclosure sale by a homeowners association ("HOA"). Before the Court are Defendants Fidelity National Title Group ("Fidelity") and Chicago Title Insurance Company's ("Chicago") motion to strike Plaintiff HSBC Bank USA, National Association, as Trustee for the Holders of Deutsche Alt-A Securities, Inc., Mortgage Loan Trust Pass-Through Certificates Series 2007-OA3's ("Bank") claim for punitive damages (ECF No. 13), as well as Defendants' motion to dismiss the Bank's Complaint (ECF No. 14; ECF No. 16 (errata)).[1] For the following reasons, the Court grants Defendants' motion to dismiss and denies Defendants' motion to strike as moot.

///

///

---

[1]The Court has reviewed the responses (ECF Nos. 18, 19) and replies (ECF No. 22, 23) to Defendants' motion to strike and motion to dismiss. The Court also has considered the authority cited in Defendants' supplemental brief (ECF No. 31), and the Bank's errata to the Complaint (ECF No. 17). The Court has reviewed the related response (ECF No. 36) and reply (ECF No. 37) to Defendants' supplement. The Court also heard oral argument on October 28, 2019. (ECF No. 40 (the "Hearing").)

## II. BACKGROUND

The following facts are taken from the Complaint (ECF No. 1) unless otherwise indicated.

Howard E. Neel and Elinor L. Neel ("Borrowers") purchased real property[2] ("Property") on April 19, 2002, with a loan in the amount of $202,000 secured by a first deed of trust ("DOT"). (*Id.* at 2-3.) The DOT identified Countrywide Bank, FSB as the lender, Servicelink as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary acting solely as a nominee for the lender and the lender's successors and assigns. (*Id.* at 3.) The Bank is the assigned beneficiary under the DOT. (*Id.*)

Chicago issued an insurance policy ("Policy") in connection with the recording of the DOT that named Countrywide Bank, FSB and its successors and/or assigns, as the insured. (*Id.*)

The Property is located within an HOA, and the HOA recorded a lien against the Property on December 27, 2012 ("HOA Lien"). (ECF No. 1 at 4.) The HOA ultimately sold the Property to Nevada New Builds, LLC ("Buyer") at a foreclosure sale ("HOA Sale") on August 30, 2013. (*Id.* at 5.)

The Buyer filed a complaint for quiet title against the Bank and others in state court in December 2013. (*Id.* at 5.) The Bank filed counterclaims, and the litigation is ongoing. (*Id.*) The Bank has incurred significant attorneys' fees and costs defending its interest in the Property. (*Id.*)

The Bank asserts the following claims against Fidelity and Chicago: (1) breach of contract; (2) contractual breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the implied covenant of good faith and fair dealing; (4) breach of fiduciary duties; and (5) violation of NRS § 686A.310. (*Id.* at 7-11.)

///

///

---

[2] 3929 Pebble Creek Avenue, Las Vegas, NV 89147.

2

## III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (alteration in original) (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

In ruling on a motion to dismiss, a court may "consider certain materials— documents attached to the complaint, documents incorporated by reference in the

complaint, or matters of judicial notice—without converting the motion . . . into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### IV. DISCUSSION

The Court dismisses the Bank's claims against Fidelity before considering whether the Bank has stated claims against Chicago.

#### A. Claims Against Fidelity

Defendants argue that the Bank's claims against Fidelity fail because the Bank cannot demonstrate that it has standing to sue Fidelity under the Policy. (ECF No. 14 at 8.) Defendants rely primarily on the Policy itself, which states that it was issued by Chicago—not Fidelity. (*Id.*; *see also* ECF No. 17-1 at 2.)

The Bank argues that Fidelity is properly named as a defendant because "Fidelity played a pivotal role in the claim investigation, handling, and ultimate denial of [the Bank's claim]." (ECF No. 18 at 9.) In support of this argument, the Bank contends that the claim handling attorney for Chicago who ultimately denied the Bank's claim is an employee of Fidelity. (*Id.*)

The Court finds the Bank's argument unpersuasive. Even if the claim handling attorney were an employee of Fidelity, the Policy unambiguously states that it was issued by Chicago—not Fidelity. (*See* ECF No. 17-1 at 2.) The Bank has not cited any legal authority to support its position that it can sue anyone besides the other party to the insurance contract—here, Chicago. (*See* ECF No. 18 at 9-11.) The allegations in the Complaint and the exhibits attached thereto do not support any legal relationship between the Bank and Fidelity to give rise to the Bank's claims against Fidelity.

Accordingly, the Court dismisses the Bank's claims to the extent that they are asserted against Fidelity.

#### B. Breach of Contract

Defendants argue that the Bank's breach of contract claim fails because the Policy does not cover the Bank's insurance claim. (ECF No. 14 at 9-16.) Defendants rely on

///

three different exclusions in the Policy, but the Court considers only the first—paragraph 3(d) of the Exclusions from Coverage—because it obviously bars coverage.

Paragraph 3(d) bars coverage for liens created after the "Date of Policy"—here, April 26, 2007. (*See* ECF No. 17-1 at 7.) Defendants argue that the HOA Lien was created on December 27, 2012—the date that the HOA Lien was recorded against the Property. (ECF No. 14 at 11.) The Bank argues that the HOA Lien was created on November 30, 1990—the date the HOA's Declarations of Covenants, Conditions and Restrictions ("Declaration") were recorded. (ECF No. 18 at 14.)

The Court finds the Bank's argument unpersuasive. The Bank relies on the version of NRS § 116.3116(5)[3] in effect at the time of the foreclosure sale, which transforms "recording of the declaration" into "record notice and perfection of the lien." NRS § 116.3116(5) (2013). According to the Bank, this means that all HOA liens are created on the date the Declaration was recorded, even if the related delinquency occurs decades later. This interpretation is unreasonable because the statute plainly states that the lien is created at the time of delinquency: "[t]he association has a lien . . . from the time the construction penalty, assessment or fine becomes due." NRS § 116.3116(1) (2013). Subsection 5 simply relieves the lienholder of the obligation of recording the lien to perfect it. *See also Wells Fargo Bank, N.A. v. Commonwealth Land Title Ins. Co.*, No. 2:18-cv-00494-APG-BNW, 2019 WL 2062947, at *4 (D. Nev. May 9, 2019).

Having found that the first exclusion bars coverage, the Court declines to consider whether the remaining exclusions bar coverage. Nevertheless, the Court will consider whether provisions of Endorsement 100.2 creates coverage despite the exclusion in Paragraph 3(d). The Court concludes that Endorsement 100.2 does not create coverage.

Endorsement 100.2(1) insures the Bank against loss or damages "sustained by reason of . . . [t]he existence at Date of Policy of . . . [c]ovenants, conditions or restrictions under which the lien of the mortgage . . . can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired." (ECF No. 17-1 at 5.) This provision does

---

[3] NRS § 116.3116(9) in the current version of the statute.

5

1 not apply because the Bank did not sustain damage due to the CC&Rs. In fact, the
2 CC&Rs expressly disclaimed the priority of the HOA Lien. (ECF No. 18-5 at 29.) A change
3 in controlling law—not the CC&Rs—caused the Bank to risk extinguishment of its DOT.
4 *See SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (2014) (finding that an HOA lien
5 constituted a true superpriority lien).

6 Endorsement 100.2(2) provides coverage for loss or damage sustained as a result
7 of future violations "on the land" of the CC&Rs:

> "[a]ny future violation on the land of any existing covenants, conditions or restrictions occurring prior to acquisition of title to the estate or interest in the land by the Insured, provided the violation results in: (a) [i]nvalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or (b) loss of title to the estate or interest in the land."

11 (ECF No. 17-1 at 5.) Chicago argues that "on the land" restricts the kind of violations that
12 are covered to physical violations, such as building an unauthorized improvement.[4] (ECF
13 No. 22 at 13.) The Bank responds that "on the land" is ambiguous and could apply to
14 nonpayment of HOA assessments. (ECF No. 18 at 14 n.28; *see also* ECF No. 40.) The
15 Court finds that Endorsement 100.2(2) unambiguously applies only to physical violations.
16 When interpreting a contract, every word must be given effect if at all possible. *Bielar v.*
17 *Washoe Health Sys., Inc.*, 306 P.3d 360, 364 (Nev. 2013) (quoting *Musser v. Bank of*
18 *Am.*, 964 P.2d 51, 54 (Nev. 1998)). The Bank's proposed interpretation of Endorsement
19 100.2(2) would make the paragraph applicable to any future violation of any existing
20 CC&Rs and would therefore render the phrase "on the land" superfluous, with no
21 restrictive effect. Moreover, the endorsement as a whole only uses "on the land" with
22 reference to physical violations. For example, section 100.2(1)(b)(1) creates coverage for
23 loss based on "[p]resent violations on the land of any enforceable covenants, conditions
24 or restrictions, and any existing improvements on the land." (ECF No. 17-1 at 5.) And
25 finally, to the extent that a layperson might understand "on the land" to encompass
26 nonpayment of HOA assessments, Chicago asserted at the Hearing that Endorsement
27 ///

---

[4]Counsel for Defendants reiterated and expounded on this contention at the Hearing.

100.2 would only be available to mortgage lenders—not average consumers. Mortgage lenders are sophisticated parties who can be expected to disentangle complex contractual terms.

Accordingly, the Court agrees with Defendants that the Policy does not provide for coverage of the Bank's dispute relating to the HOA Sale. The Bank thus cannot state a claim for breach of contract.

### C. Breach of Implied Covenants

The Bank's claims for breach of the implied covenant are expressly predicated on Defendants' purported breach of contract. (*See* ECF No. 1 at 8-9.) For example, the Bank alleges that "Fidelity's and Chicago's breaches of contract [constitute] a self-serving effort to avoid having to incur what is otherwise likely to be substantial expense." (*Id.* at 8.) Even though plaintiffs may sometimes recover damages for breach of the implied covenant in the absence of a breach of contract, *see Sonoma Springs Ltd. P'ship v. Fid. & Deposit Co. of Maryland*, No. 3:18-cv-00021-LRH-CBC, 2019 WL 3848790, at *7 (D. Nev. Aug. 14, 2019), the Bank cannot do so here because its claims for breach of the implied covenant are expressly predicated on Defendants' purported breach of contract.

Accordingly, the Court will dismiss the Bank's claims for breach of the implied covenant without prejudice.

### D. Breach of Fiduciary Duties

The Bank's claim for breach of fiduciary duties must be dismissed because the Nevada Supreme Court has held that a breach of fiduciary duty in the insurance context is not an independent cause of action. *See Commonwealth*, 2019 WL 2062947, at *6 (quoting *Powers v. U.S. Auto Ass'n*, 962 P. 2d 596, 602 (Nev. 1998)). Rather, "breach of the fiduciary nature of the insurer-insured relationship is part of the duty of good faith and fair dealing." *Id.* (quoting *Powers*, 962 P.2d at 603).

Accordingly, the Court will dismiss the Bank's claim for breach of fiduciary duties.

///

///

### E. Violation of NRS § 686A.310

The Bank's allegations regarding Defendants' purported violation of NRS § 686A.310 are conclusory and devoid of factual support. (*See* ECF No. 1 at 10-11.) The Bank "merely recites the pertinent statutory language of [NRS § 686A.310] without presenting any" supporting factual allegations. *Patel v. Am. Nat'l Prop. & Cas. Co.*, 367 F. Supp. 3d 1186, 1193 (D. Nev. 2019). These allegations are insufficient to permit the Court to infer more than a possibility of misconduct. *Id.*

Accordingly, the Court will dismiss the Bank's claim for violation of NRS § 686A.310 without prejudice.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' motion to dismiss (ECF No. 14) is granted.

It is further ordered that Defendants' motion to strike (ECF No. 13) is denied as moot.

The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED THIS 30th day of October 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE