UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF DEUTSCHE ALT-A SECURITIES, INC., MORTGAGE LOAN TRUST PASS-THROUGH CERTIFICATES SERIES 2007-OA3, | Case No. 2:18-cv-02162-MMD-DJA |
| | ORDER |
| Plaintiff, | |
| v. | |
| FIDELITY NATIONAL TITLE GROUP, INC., *et al.*, | |
| Defendants. | |

## I.    SUMMARY

Plaintiff HSBC Bank brought this insurance action on November 9, 2018. (ECF No. 1.) On October 30, 2019, the Court dismissed Plaintiff's complaint in its entirety and entered judgment. (ECF Nos. 12, 13.) Plaintiff timely appealed and that appeal remains pending. (ECF No. 43,45.) Before the Court is Plaintiff's motion for an indicative ruling under Rule 62.1. (ECF No. 50 (the "Motion").)[1] Because the Court finds Plaintiff's failure to request the appropriate endorsement form prior to discovery was excusable neglect and the proffered newly-discovered evidence may impact the outcome of the Court's decision to dismiss its claims, the Court indicates that if the Ninth Circuit were to remand the case, the Court would grant the motion for reconsideration to permit Plaintiff to amend its complaint.

///

///

---

[1]The Court also considers Defendants' response (ECF No. 51) and Plaintiff's reply (ECF No. 52).

## II.    BACKGROUND

This case is one of dozens brought in Nevada by holders of deeds of trust against title insurers. At its center is the title insurance policy ("Policy") issued by Defendant Chicago Title Insurance Company ("Chicago"), and whether the Policy excludes coverage for a deed of trust holder when a homeowner's association ("HOA") forecloses on its superpriority lien and extinguishes the senior lien. Two aspects of the Policy in particular bear on the outcome of this case: exclusion 3(d) in the Policy and the attached ALTA endorsement 5 ("ALTA 5"). These documents have appeared in several cases before the Court, and each time the Court found that exclusion 3(d) barred coverage and the ALTA 5 did not otherwise create coverage.[2] That issue has been appealed and is currently pending before the Ninth Circuit in several cases.[3]

Plaintiff raised five claims in its Complaint: (1) breach of contract, (2) contractual and (3) tortious breach of the implied covenant of good faith and fair dealing, (4) breach of fiduciary duties, and (5) violations of Nevada's bad faith statute, NRS § 686A.310. (ECF No. 1 at 7-11.) Defendants moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) as to all claims, arguing additionally that Plaintiff lacked standing to sue Defendant Fidelity National Title Group, Inc. ("Fidelity"). (ECF No. 14.) Plaintiff opposed the motion, but requested leave to amend its Complaint as to the bad faith claim, specifically. (ECF No. 18 at 22.)

The Court granted Defendants' motion to dismiss in its entirety. (ECF No. 41.) Finding Plaintiff had not cited any legal authority to support its position that it could sue anyone besides the other party to the insurance contract, the Court dismissed all the claims against Fidelity. (*Id.* at 4.) Next, the Court found that exclusion 3(d) barred coverage and no provided endorsement created coverage, and dismissed the breach of contract claim. (*Id.* at 4-7.) Third, the Court dismissed the claims for breach of the implied

---

[2]*See, e.g.*, *Wells Fargo Bank, N.A. v. Fidelity Nat'l Title Ins. Co.*, Case No. 3:19-cv-00241-MMD-WGC, 2019 WL 5578487 (D. Nev. Oct. 29, 2019) ("*Wells Fargo II*").

[3]*See, e.g.*, *Wells Fargo Bank, N.A. v. Fidelity Nat'l Title Ins. Co.*, Case No. 19-17332.

1   covenant of good faith and fair dealing without prejudice, reasoning that such claims are

2   predicated on the breach of contract claim. (*Id.* at 7.) Fourth, the Court dismissed the

3   claim for breach of fiduciary duty because under Nevada law, such a claim is not an

4   independent cause of action in the insurance context. (*Id.* at 7.) Finally, the Court

5   dismissed the statutory bad faith claim without prejudice because Plaintiff's Complaint

6   was "conclusory and devoid of factual support." (*Id.* at 8.)

7       Plaintiff now asks the Court to reconsider its decision to dismiss the case and enter

8   judgment without providing an opportunity to amend. (ECF No. 50.)

9   **III.    LEGAL STANDARD**

10      "Because the filing of a notice of appeal generally divests the district court of

11  jurisdiction over matters appealed," a district court lacks power to amend its dismissal of

12  an action. *Pro Sales, Inc. v. Texaco, U.S.A.*, 792 F.2d 1394, 1396, n. 1 (9th Cir. 1986).

13  However, Plaintiff may—as it has done here—move the Court for an indicative ruling

14  under Fed. R. Civ. P. 62.1. *See id.* The Court may therefore: (1) defer considering the

15  Motion; (2) deny the Motion; or (3) "state either that it would grant the motion if the court

16  of appeals remands for that purpose or that the motion raises a substantial issue." Fed.

17  R. Civ. P. 62.1(a); *see also Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004) ("To

18  seek Rule 60(b) relief during the pendency of an appeal, 'the proper procedure is to ask

19  the district court whether it wishes to entertain the motion, or to grant it, and then move

20  [the Circuit Court of Appeals], if appropriate, for remand of the case.'") (citations omitted).

21      Under Rule 60(b), a court may relieve a party from a final judgment, order or

22  proceeding only in the following circumstances: (1) mistake, inadvertence, surprise, or

23  excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5)

24  the judgment has been satisfied; or (6) any other reason justifying relief from the

25  judgment. *Stewart v. Dupnik*, 243 F.3d 549, 549 (9th Cir. 2000). A motion for

26  reconsideration must set forth the following: (1) some valid reason why the court should

27  revisit its prior order; and (2) facts or law of a "strongly convincing nature" in support of

28

3

1    reversing the prior decision. *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D.

2    Nev. 2003).

3    **IV.    DISCUSSION**

4        Plaintiff raises, in essence, three arguments in support of its Motion. First, Plaintiff

5    argues the Court should have granted it leave to amend its Complaint because none of

6    the claims were dismissed with prejudice and leave to amend should be freely given.[4]

7    Second, Plaintiff claims its failure to recognize the endorsement form attached to the

8    Policy was a different form than what the Policy itself indicated should be attached was

9    excusable neglect. Finally, Plaintiff argues that newly discovered evidence of trade usage

10   and custom indicate that the ALTA 5 form either would have provided coverage, or at the

11   very least is evidence that supports its claim for bad faith. When considered together,

12   Plaintiff argues, the circumstances support reconsidering the dismissal order and

13   permitting Plaintiff to amend its Complaint.

14       In response, Defendants argue that Plaintiff's neglect was not excusable and that

15   nothing in Plaintiff's Motion indicates the Court would reach a different outcome.

16   Particularly, Defendant cites to the length of Plaintiff's delay in bringing its reconsideration

17   motion and that the Court has previously determined the ALTA 5 would not create

18   coverage. Defendants further argue that the liberal Rule 15 standard permitting

19   amendment is displaced after final judgment is entered. As further explained below, the

20   Court agrees that Plaintiff should be permitted leave to amend the claims in the Complaint

21   which are not futile, that its oversight regarding the incorrect attached endorsement

22   constitutes excusable neglect, and that the trade manuals should be considered as newly

23   discovered evidence with reference to Plaintiff's bad faith claims.

24   ///

25

26       [4]Defendants argue that after judgement is entered, a more stringent standard for
27   Rule 60(b) motions displaces Rule 15's liberal amendment standard. (ECF No. 51 at 14-
     15 (citing *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1173 (9th Cir. 2017).) But
28   the authority Defendants cite to considers a situation in which the plaintiff had multiple
     opportunities to amend and had routinely failed to ameliorate deficiencies in the
     complaint.

4

### A.    Excusable Neglect

Plaintiff argues the Court should reconsider its order dismissing the Complaint because its failure to notice the incorrect endorsement was attached to the Policy was excusable neglect. As explained below, the Court agrees.

"To determine whether the inadvertence can be excusable, we apply the Pioneer factors: (1) the danger of prejudice to the nonmoving party; (2) the length of delay; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the moving party's conduct was in good faith." *Harvest v. Castro*, 531 F. 3d 737, 746 (9th Cir. 2008). "The determination of what conduct constitutes 'excusable neglect' under Rule 60(b)(1) and similar rules 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 395 (1993).

The Court dismissed Plaintiff's Complaint before discovery and without giving an opportunity to amend. While it is true that Plaintiff's failure to notice the incorrect endorsement was attached was due to their own negligence, this is an error that could have easily been cured either by amendment or eventually in discovery. Further, the Court notes that the *Pioneer* factors weigh in favor of granting Plaintiff leave to amend. The Court finds the error was not in bad faith and the request for reconsideration is timely. Further, had the Court granted leave to amend initially rather than entering final judgment, the case would not have proceeded to the court of appeals—in other words, it was not within Plaintiff's control that the case proceeded to appeal. Finally, while the Court recognizes a risk of prejudice to Defendants in the form of additional time and expense litigating these issues, they are not issues which were already considered by the Court in this case.[5]

///

---

[5]The Court notes further that it may stay the proceedings, fully or in part, pending the outcome of relevant cases currently on appeal to prevent unnecessary time and expense to the parties.

1          **B.     New Evidence**

2          Plaintiff also argues that the Court should consider its newly discovered evidence

3  of trade practices in the form of claims manuals. "Relief from judgment on the basis of

4  newly discovered evidence is warranted if (1) the moving party can show the evidence

5  relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b);

6  (2) the moving party exercised due diligence to discover this evidence; and (3) the newly

7  discovered evidence must be of such magnitude that production of it earlier would have

8  been likely to change the disposition of the case." *Feature Realty, Inc. v. City of Spokane*,

9  331 F.3d 1082, 1093 (9th Cir. 2003) (internal quotation and citation omitted). Defendant

10  first argues the evidence is not "newly discovered" because it was available on the internet

11  and could have been uncovered with reasonable diligence had Plaintiff thought to look

12  for it. (ECF No. 51 at 9.) Further, Defendant asserts that Plaintiff did not exercise diligence

13  in discovering this evidence. (*Id.* at 10.) Finally, Defendant claims that even if newly

14  discovered, the claims manuals would not change the disposition of the case because

15  they are extraneous evidence the Court cannot consider after finding the contract's

16  language is unambiguous. (*Id.* at 11.) Although it is a close call, the Court will consider

17  the evidence newly discovered and that it could potentially change the outcome of the

18  dismissal order as to the bad faith claims.

19          While true that the claims manuals were available online when Plaintiff filed its

20  Complaint and opposed Defendant's motion to dismiss, their utility in this case may not

21  have been directly apparent considering the incorrect endorsement was attached to the

22  Policy. Plaintiff may not have known the relevance of the existence of two ALTA 5

23  endorsements with potentially meaningful difference used in the title insurance industry

24  because no ALTA 5 was attached. Moreover, because this was one of the first cases

25  dealing with title insurance, the significance of the ALTA 5 and its precise language and

26  trade usage was not yet known to Plaintiff. These are questions which may have resolved

27  themselves in discovery. Accordingly, the Court declines to find Plaintiff did not exercise

28  due diligence in discovering the claims manuals or in understanding their relevance to the

1  bad faith claims. The Court will also consider the claims manuals newly discovered
2  evidence.

3       Moreover, the claims manuals may change the Court's consideration of the bad
4  faith claims. While the parties dispute whether the Court can consider trade practices as
5  extraneous evidence when interpreting a contract, Defendants do not reasonably argue
6  that the claims manuals would not change the Court's analysis of the bad faith claims.
7  The Court's analysis of the bad faith claims would change if, as Plaintiff argues,
8  Defendants were aware that one version of the ALTA 5 was intended to provide coverage
9  for claims like the one in this case, but denied the claim and refused to defend despite
10 that knowledge.[6]

11      Because the Court considers the claims manuals newly discovered evidence, that
12 Plaintiff's failure to discover the manuals were not because it lacked due diligence, and
13 that the claims manuals could change the outcome of the dismissal order as to at least
14 the bad faith claims, the Court would grant Plaintiff's reconsideration motion.

15 **V.    CONCLUSION**

16      The Court notes that the parties made several arguments and cited to several
17 cases not discussed above. The Court has reviewed these arguments and cases and
18 determines that they do not warrant discussion as they do not affect the outcome of the
19 motions before the Court.

20      It is therefore ordered that plaintiff's motion for an indicative ruling (ECF No. 50) is
21 granted. If the Ninth Circuit Court of Appeals remands this case to this Court's jurisdiction,
22 the Court will consider plaintiff's motion for reconsideration as explained above.

23      DATED THIS 22nd Day of April 2021.

24

25

26                                   MIRANDA M. DU
                                  CHIEF UNITED STATES DISTRICT JUDGE

27

28      [6]If the Ninth Circuit remands the case, the Court will likewise analyze whether it
can consider the claims manuals in interpreting the contract under Nevada law.